**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **Case No. 21-31954** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

---

# RECEIVER'S MOTION TO WITHDRAW THE REFERENCE OF MOTION FOR ENTRY OF FINAL DECREE CLOSING CHAPTER 11 BANKRUPTCY CASE

---

**BROWN FOX PLLC**

Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
C. Alan Carrillo
State Bar No. 24109693
alan@brownfoxlaw.com

8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

***Counsel to Receiver for Reorganized Debtor 2999TC Acquisitions, LLC***

# TABLE OF CONTENTS


I. EXECUTIVE SUMMARY ..... 1

II. JURISDICTION AND VENUE ..... 2

III. BACKGROUND ..... 2

A. 2999TC's Bankruptcy Proceeding ..... 2

B. SEC Receivership ..... 5

C. The Receiver and HNGH's Disputes ..... 7

D. Resolution of the Receiver and HNGH's Disputes ..... 7

E. The Receiver's Motion for Final Decree ..... 8

F. Entry of the New Receivership Order and Ratification of the Settlement Order ..... 8

IV. REQUEST FOR RELIEF ..... 9

V. BASIS FOR RELIEF ..... 9

A. The District Court's Jurisdiction Over and Reference of This Bankruptcy Case ..... 9

B. The District Court Should Withdraw the Reference of the Motion for Final Decree ..... 10

VI. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Cases**

*In re Baldwin-United Corp.*,
57 B.R. 751 (S.D. Ohio 1985) ........ 14

*In re Chateaugay Corp.*,
104 B.R. 622 (S.D.N.Y. 1989) ........ 14

*In re Fresh Approach, Inc.*,
51 B.R. 412 (Bankr. N.D. Tex. 1985) ........ 13

*In re Highland Cap. Mgmt., L.P.*,
No. 19-34054-SGJ-11, 2022 WL 1050064 (Bankr. N.D. Tex. Apr. 6, 2022) ........ 10

*Mirant Corp. v. The Southern Co.*,
337 B.R. 107 (N.D. Tex. 2006) ........ 10

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ........ 10

*SEC v. Barton*,
No. 23-10516 (5th Cir. Aug. 14, 2024) ........ 9

*SEC v. Barton*,
No. 23-10648 (5th Cir. Mar. 26, 2024) ........ 9

*SEC v. Barton*,
No. 23-11237 (5th Cir. Apr. 17, 2025) ........ 9

**Codes**

28 U.S.C. § 1334 (b) ........ 9

28 U.S.C. § 1334(a) ........ 9

28 U.S.C. § 157(a) ........ 9

28 U.S.C. § 157(d) ........ 10, 13

Cortney C. Thomas ("**Receiver**"), the court-appointed Receiver for 2999TC Acquisitions, LLC ("**Reorganized Debtor**" or "**2999TC**"), the reorganized debtor in the above-captioned bankruptcy case ("**Bankruptcy Case**") files this motion ("**Motion**"). This Motion requests the U.S. District Court for the Northern District of Texas, Dallas Division ("**District Court**") for entry of an order withdrawing the reference of the Receiver's *Motion for Entry of Final Decree Closing Chapter 11 Case* [Dkt. 307] ("**Motion for Final Decree**") to the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division ("**Bankruptcy Court**"), in accordance with 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a), and Local Bankruptcy Rule 5011-1.

## I. EXECUTIVE SUMMARY

1. In June 2023, the Receiver filed the Motion for Final Decree following the District Court's approval of a certain settlement agreement ("**Settlement Agreement**") between the Receiver and HNGH Turtle Creek, LLC ("**HNGH**"), the owner of real property located at 2999 Turtle Creek Boulevard, Dallas, Texas 75219 ("**Property**"). As explained further below and in the Motion for Final Decree, the Property was 2999TC's only tangible asset prior to the confirmation of 2999TC's *Third Amended Plan of Reorganization* [Dkt. 108] ("**Plan**").

2. The Motion for Final Decree received two objections from 2999TC's former counsel, who represented the Reorganized Debtor prior to the Receiver's appointment. One objection was filed by Joyce W. Lindauer on June 23, 2023, on behalf of Joyce W. Lindauer Attorney, PLLC [Dkt. 309] ("**Lindauer Objection**"), and another objection was filed by Robin Phelan on June 30, 2023, on behalf of PHELANLAW [Dkt. 310] ("**Phelan Objection**," and, together with the Lindauer Objection, the "**Objections**"). Both Objections argue that the proceeds from the Settlement Agreement belong to the Reorganized Debtor, and that Lindauer and Phelan's law firms are creditors that must be paid out of the settlement proceeds before the Bankruptcy Court grants the Motion for Final Decree.

3. Although the Bankruptcy Court has yet to hold a hearing on the Motion for Final Decree, it has held six status conferences on it over the past two years. In those status conferences, the Bankruptcy Court informed the parties that it believes the question of whether the settlement proceeds belong to the receivership estate or the bankruptcy estate—central to the resolution of the Motion for Final Decree—to be one for the District Court, which presides over *Securities and Exchange Commission v. Timothy Barton, et al.*, Case No. 22-02118 (the "**Receivership Case**"), to decide.

4. Now that the District Court's order appointing the Receiver in the Receivership Case has been affirmed by the U.S. Court of Appeals for the Fifth Circuit, the Receiver asks the District Court to withdraw the reference of—and to decide—the Motion for Final Decree.

## II. JURISDICTION AND VENUE

5. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This Motion seeks relief under 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a), and Local Bankruptcy Rule 5011-1.

## III. BACKGROUND

### A. 2999TC's Bankruptcy Proceeding

1. On October 29, 2021 ("**Petition Date**"), 2999TC filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code.

2. 2999TC—a single-purpose entity—purchased the Property in September 2019, purportedly for a purchase price of $43,049,929. 2999TC was formerly operated by Mr. Timothy Barton ("**Barton**").

3. To purchase the Property, 2999TC obtained a secured loan of $32,500,000 from 2999 Turtle Creek LLC, evidenced by that Secured Promissory Note dated as of September 20, 2019 ("**Note**"). The Note was secured by the Property, including all improvements and fixtures, as evidenced by that certain Deed of Trust, Security Agreement and Fixture Filing made as of September 20, 2019 ("**Deed of Trust**"), and recorded in the real property records of Dallas County, Texas. Barton guaranteed 2999TC's obligations under the Note and Deed of Trust pursuant to a Guaranty dated as of September 20, 2019 ("**Guaranty**"). HNGH acquired the Note, Deed of Trust, and Guaranty from 2999 Turtle Creek LLC in December 2020.

4. Following 2999TC's failure to repay the Note at maturity, 2999TC and HNGH entered into a Forbearance and Payoff Agreement effective as of March 1, 2021 ("**Forbearance Agreement**," and, together with the Note, Deed of Trust, and Guaranty, the "**Loan Documents**"). 2999TC provided HNGH with a deed in lieu of foreclosure for the Property ("**Deed in Lieu**") as part of the Forbearance Agreement.

5. The Forbearance Agreement extended the Note's maturity through October 29, 2021, but 2999TC again failed to pay all amounts due and owing by that date. Following the default, on October 29, 2021, HNGH filed the Deed in Lieu in the Dallas County Real Property Records. 2999TC filed this Bankruptcy Case later that day.

6. The Dallas County Clerk recorded the Deed in Lieu on November 1, 2021. 2999TC recorded a lis pendens on the Property on November 5, 2021.

7. 2999TC and HNGH were enthralled in litigation related to the Property and the Loan Documents from the outset of the Bankruptcy Case. 2999TC filed its first adversary proceeding against HNGH on November 11, 2021, seeking to avoid and recover the transfer of the Property (by way of the Deed in Lieu) as a preferential and fraudulent transfer under the

Bankruptcy Code [Adv. Proc. 21-03085] ("**First Adversary Proceeding**"). A thorough factual and procedural background of the disputes between 2999TC and HNGH is set forth in the Bankruptcy Court's Order Enforcing Agreed Orders (defined below) entered on September 28, 2022 [Dkt. 283], which is incorporated herein by reference.

8. On December 10, 2021, the Bankruptcy Court entered an *Agreed Order* [Dkt. 64] ("**December 2021 Agreed Order**") resolving HNGH's motion to dismiss the Bankruptcy Case [Dkt. 9] and motion to lift the automatic stay [Dkt. 10], 2999TC's motion to enforce the stay [Dkt. 14], and motion for sanctions [Dkt. 15], and 2999TC's adversary proceeding against HNGH seeking to avoid and recover the transfer of the Property under the Deed in Lieu. The December 2021 Agreed Order required 2999TC to pay HNGH certain amounts by March 15, 2022, in order to retain the Property.

9. On March 14, 2022, 2999TC filed a motion to extend the payoff deadline under the December 2021 Agreed Order [Dkt. 85]. On March 17, 2022, the Bankruptcy Court entered another *Agreed Order* [Dkt. 94] ("**March 2021 Agreed Order**") resolving 2999TC's motion, which extended the payoff deadline through May 2022.

10. On May 18, 2022, the Bankruptcy Court entered an Order [Dkt. 123] ("**Confirmation Order**") confirming the Plan. The Plan incorporated the December 2021 Agreed Order and the March 2022 Agreed Order (together, "**Agreed Orders**"). The Plan became effective on May 21, 2022.

11. On May 31, 2022, the Reorganized Debtor defaulted on its obligations to HNGH under the Agreed Orders, prompting HNGH to file its *Motion to Enforce Agreed Orders* [Dkt. 134] on June 3, 2022. HNGH's motion sought to confirm, among other things, that HNGH rightfully owned the Property free and clear of any Reorganized Debtor interest based on the Reorganized

Debtor's defaults under the Agreed Orders. The Bankruptcy Court set the motion for a hearing to begin on June 10, 2022.

12. On June 9, 2022, the Reorganized Debtor filed a second adversary proceeding against HNGH [Adv. Proc. 22-03061] ("**Second Adversary Proceeding**"), alleging that HNGH, not the Reorganized Debtor, breached the Agreed Orders and that the Reorganized Debtor retained rightful ownership of the Property.

13. On September 28, 2022, following more than fifteen days of hearing settings, more than fifty hours of evidence and argument, and weeks of additional briefing, the Bankruptcy Court issued its *Order (a) Granting in Part and Denying in Part HNGH Turtle Creek, LLC's Motion to Enforce Agreed Orders; (b) Denying the Debtor's Plan-Related Motions; and (c) Granting and Denying Ancillary Relief* ("**Order Enforcing Agreed Orders**") [Dkt. 283]. The Bankruptcy Court ordered the Reorganized Debtor to remove its lis pendens from the Property, which the Reorganized Debtor accomplished on October 13, 2022. The Bankruptcy Court also denied the Reorganized Debtor's requests to modify the Plan and Confirmation Order.

14. On September 29, 2022, the Reorganized Debtor filed its Notice of Appeal of the Order Enforcing Agreed Orders. The next day, the Reorganized Debtor filed its Amended Notice of Appeal [Dkt. 288], which was docketed on October 3, 2022, commencing Civil Case No. 3:22-cv-02186 ("**Appeal**") in the District Court. On October 14, 2022, the Reorganized Debtor filed its Motion for Stay Pending Appeal [Dkt. 297] ("**Stay Motion**") in the Bankruptcy Case. A hearing on the Stay Motion was stayed by the Receiver's Notice of Stay [Dkt. 302], which was docketed on October 24, 2022, as further discussed below.

**B. SEC Receivership**

15. On September 23, 2022, five days before the District Court entered its Order Enforcing Agreed Orders, the Securities and Exchange Commission ("**SEC**") filed a lawsuit

against Barton and numerous of his entities (collectively, the "**Receivership Entities**"), commencing the Receivership Case.

16. On October 18, 2022, the District Court entered its Order Appointing Receiver [Dist. Ct. Dkt. 29] ("**Initial Receivership Order**") naming the undersigned as Receiver for the Receivership Entities and directing the Receiver to take custody, control, and possession of all property of the Receivership Entities (collectively, as defined in the Receivership Order, "**Receivership Property**"). *Receivership Order* ¶ 6(B). Pursuant to the Initial Receivership Order, the Receiver was empowered to "take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of Receivership Property" and to "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." *Id*. ¶¶ 6(G)–(H). Furthermore, the Receivership Order vested the Receiver "with management authority" for "all Receivership Entities and may therefore file and manage a Chapter 11 petition." *Id.* ¶ 50. Under the Initial Receivership Order, 2999TC was a Receivership Entity of which the Receiver has the authority to control, act on behalf of, and bind to any decisions made on 2999TC's behalf, "including under the Bankruptcy Code to the exclusion of any other person or entity." *Id.*

17. The Initial Receivership Order also stayed all litigation involving the Receivership Entities ("**Receivership Stay**"), including the Bankruptcy Case and related adversary proceedings. *Id.* ¶¶ 34–36.

18. On November 25, 2022, HNGH filed a motion to intervene in the Receivership Case and asked the District Court to confirm HNGH's ownership of the Property [Dist. Ct. Dkt. 69]. Although the Receiver did not oppose HNGH's intervention, the Receiver did oppose

HNGH's effort to disregard this Court's stay of litigation, seek priority treatment, and force immediate resolution of stayed litigation regarding the Property [Dist. Ct. Dkt. 94]. The parties discussed a potential resolution of their disputes concerning the Property, but negotiations initially resulted in a stalemate.

19. On February 9, 2023, HNGH filed its supplement to its motion to intervene [Dist. Ct. Dkt. 151]. The next day, the District Court granted in part and denied in part HNGH's motion, granting permission for HNGH to intervene in the Receivership Case but denying its request to confirm ownership of the Property [Dist. Ct. Dkt. 154]. The District Court also ordered the parties to mediate and appointed retired Chief Bankruptcy Judge Harlin D. Hale as mediator.

**C. The Receiver and HNGH's Disputes**

20. The Receiver and HNGH's disputes were threefold: (1) the ownership and rightful possession of the Property; (2) the amount due to HNGH under the Loan Documents; and (3) claims and causes of action the Receiver may have possessed against HNGH on behalf of the Receivership Entities and their respective estates.

21. On March 10, 2023, the Receiver and HNGH participated in a mediation led by retired Chief Bankruptcy Judge Hale. The mediation lasted all day. That evening, the parties entered into the general terms of a global resolution of the disputes concerning the Property and were directed by Judge Hale to memorialize the agreement with a written settlement agreement and a motion for approval of the same in the Receivership Case.

**D. Resolution of the Receiver and HNGH's Disputes**

22. On April 17, 2023, the Receiver filed a Motion with the District Court [Dist. Ct. Dkt. 210] ("**Settlement Motion**"), seeking approval of the Settlement Agreement between the Receiver and HNGH [Dist. Ct. Dkt. 210-1] ("**Settlement Agreement**"). A true and correct copy of the Settlement Motion and Settlement Agreement is attached to the Motion for Final Decree as

Exhibit A and incorporated therein by reference. Barton filed a response in opposition to the Receiver's Settlement Motion [Dist. Ct. Dkt. 230].

23. On May 15, 2023, the District Court entered an Order in the Receivership Case approving the Settlement Agreement [Dist. Ct. Dkt. 236] ("**Settlement Order**"). A true and correct copy of the Settlement Order is attached to the Motion for Final Decree as Exhibit B and incorporated therein by reference.

**E. The Receiver's Motion for Final Decree**

24. As a result of the Settlement Agreement and the District Court's Settlement Order, all material outstanding issues in the Bankruptcy Case are resolved and all the Reorganized Debtor's assets are fully administered, as further described in the Motion for Final Decree. The Settlement Order lifted the Receivership Stay to allow the Reorganized Debtor and HNGH to take all steps necessary to dismiss the Appeal, dismiss the Second Adversary Proceeding, and close the Bankruptcy Case. Accordingly, the Receiver filed the Motion for Final Decree in June 2023.

**F. Entry of the New Receivership Order and Ratification of the Settlement Order**

25. After the Motion for Final Decree was filed, the Fifth Circuit vacated the Initial Receivership Order and the District Court solicited briefing and conducted a hearing to consider entry of a new receivership order, which the District Court entered on November 29, 2023 [Dist. Ct. Dkt. 417] ("**Receivership Order**"). The new Receivership Order also named 2999TC as one of the Receivership Entities and includes the same Litigation Stay as the Initial Receivership Order. *Receivership Order*, Section IX, ¶¶ 1, 34–36.

26. In connection with the District Court's entry of the Receivership Order, the District Court also ratified its Settlement Order through its *Order Granting in Part Receiver's Blessing Motion* [Dist. Ct. Dkt. 419] ("**Ratification Order**").

27. The Fifth Circuit recently affirmed the Receivership Order—namely, the District Court's imposition and scope of the receivership and the grant of a preliminary injunction. The Fifth Circuit also dismissed Barton's appeal of certain of the District Court's orders related to the Receivership Order, including the Ratification Order. *See generally SEC v. Barton*, No. 23-11237 (5th Cir. Apr. 17, 2025).[1]

## IV. REQUEST FOR RELIEF

28. By this Motion, the Receiver seeks entry of an order, in accordance with 28 U.S.C. § 157(d), Bankruptcy Rule 5011(a), and Local Bankruptcy Rule 5011-1, withdrawing the reference of the Motion for Final Decree to the Bankruptcy Court.

## V. BASIS FOR RELIEF

### A. The District Court's Jurisdiction Over and Reference of This Bankruptcy Case

29. Federal district courts have original and exclusive jurisdiction of civil cases under Title 11 of the United States Code ("**Bankruptcy Code**") and original but not exclusive jurisdiction of proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. *See* 28 U.S.C. §§ 1334(a), (b). A district court can refer these cases and proceedings to the bankruptcy court within that district. *See* 28 U.S.C. § 157(a).

30. The District Court exercised the authority granted by Section 157a and entered Miscellaneous Rule No. 33 on August 3, 1984, referring all cases under the Bankruptcy Code or proceedings arising in related-to cases under the Bankruptcy Code to the Bankruptcy Court.

[1] Considering Barton's appeals of the Receivership Order and Ratification Order, the Fifth Circuit dismissed Barton's earlier appeal of the Settlement Order as moot and dismissed, for lack of subject matter jurisdiction, Barton's separate attempted *pro se* appeal of the District Court's dismissal of 2999TC's appeal of the Order Enforcing Agreed Orders as a result of the Settlement Agreement. *See SEC v. Barton*, No. 23-10516 (5th Cir. Aug. 14, 2024) (dismissing as moot Barton's appeal of the Settlement Order because the "Ratification Order has now displaced the earlier order approving the settlement"); *SEC v. Barton*, No. 23-10648 (5th Cir. Mar. 26, 2024) (dismissing Barton's attempted appeal for lack of subject matter jurisdiction because "Barton is not a party to the underlying dispute—the stipulated voluntary dismissal is between 2999TC and HNGH").

**B. The District Court Should Withdraw the Reference of the Motion for Final Decree**

31. The District Court can withdraw the reference, in whole or in part, of any case or proceeding, on the District Court's own motion or on a timely motion of a party for cause. *See* 28 U.S.C. § 157(d). "Cause" is not defined, but it can be established by analyzing the following factors: "(1) whether the matter is core or noncore; (2) whether the matter involves a jury demand; (3) whether withdrawal would further uniformity in bankruptcy administration; (4) whether withdrawal would reduce forum-shopping and confusion; (5) whether withdrawal would foster economical use of debtors' and creditors' resources; and (6) whether withdrawal would expedite the bankruptcy process." *In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ-11, 2022 WL 1050064, at *5 (Bankr. N.D. Tex. Apr. 6, 2022) (explaining that Section 157(d) "does not define 'cause shown,' but the United States Court of Appeal for the Fifth Circuit, interpreting the United States Supreme Court case of *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), has identified a number of factors for courts to consider in determining whether permissive withdrawal of the reference is appropriate"). Courts in this District have placed an emphasis on the first two factors. *Id.* (citing *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 115–23 (N.D. Tex. 2006)).

32. The factors weigh in favor of withdrawing the reference of the Motion for Final Decree. Although the Motion for Final Decree is a core matter and does not require a jury, the Bankruptcy Court has expressly told the parties that a central issue of the Motion for Final Decree—whether the settlement proceeds belong to the bankruptcy estate or the receivership estate—is a noncore question for the District Court, which presides over the Receivership Case, to decide and weigh in favor of withdrawing the reference of the Motion for Final Decree. The Bankruptcy Court said so in numerous status conferences on the Motion for Final Decree while

awaiting the Fifth Circuit's decision of Barton's appeals of the Receivership Order and Ratification Order.

33. Specifically, the Bankruptcy Court identified an open issue central to the resolution of the Motion for Final Decree: whether the proceeds of the Settlement Agreement "are property of the estate," which "seems like that's something that has to be resolved before the case is closed."[2] Indeed, the Bankruptcy Court warned: "But I'm telling you all, I'm not going to grant the [Motion for Final Decree] with this issue hanging out there."[3]

34. The Bankruptcy Court also identified the District Court, which oversees the Receivership Case, as the court most suited "to decide who owns the settlement proceeds."[4] The Bankruptcy Court stated decisively:

> I think I've already decided that preliminary issue which is, I don't think I want to decide it. I don't think I'm really the right Court to decide as between two competing estates; a receivership estate and a bankruptcy estate who owns the settlement proceeds. I'm kind of strongly telegraphing here that I think Judge Starr is the right one to make that call…. And I'm already convinced, and I'm even more convinced the District Court is the one that should decide this issue, because it's not a simple bankruptcy issue. When you have competing demands, you have the receivership estate and the bankruptcy estate. We have a district court judge who can be both of those things. He can be the receivership judge and he can resolve this, if the motion to withdraw -- if a motion to withdraw the reference is granted. Judge Starr can decide these issues. So that's kind of what I want to see happen….

---

[2] Ex. A, January 2024 Status Conference Tr. at 38:13–16 (APP039); *see also id.* at 39:22–40:6 (APP040–041) ("But if I set [the Motion for Final Decree] for hearing, I don't know how I close the case without this issue being resolved. That means either I have to rule on it in connection with the closing of the case, or another judge rules on it before the case is closed. It has to be one of those two, right? Either I have to find that there are no estate assets left to administer because the bankruptcy estate doesn't own some of the proceeds, or another Court has to. Some Court has to rule on that before I can close the case, I think.").

[3] *Id.* at 59:24–60:1 (APP060).

[4] *Id.* at 48:24–49:14 (APP049) ("The more we talk, the more it seems to me like it's the District Court that needs to decide who owns the settlement proceeds. I understand [HNGH's counsel's] frustration that, you know, the parties could seek to intervene in the District Court to resolve that issue. Another option would be for somebody to file a motion to withdraw the reference of the application for final decree. I would then make a recommendation not on the merits, but perhaps recommending that the District Court withdraw the reference and the District Court decide if the District Court thinks that the timing is appropriate to make that decision with the appeals pending, then the District Court can decide that issue. What about that procedural vehicle, somebody filing a motion to withdraw the reference of the application for final decree?").

> If someone wants this case closed, I don't think I can do it until some Court somewhere else decides the issue of who owns the proceeds.[5]

35. The Bankruptcy Court reaffirmed its position in the latest status conference, which was held on April 10, 2025, prior to the Fifth Circuit affirming the Receivership Order:

> [A]fter going back and re-reading the transcript from the last hearing, is that I'm becoming increasingly uncomfortable with the idea that I'm ever going to rule on who owns the funds as between the bankruptcy estate and the receivership estate.
>
> It sure seems like Judge Starr is the appropriate judge to make that determination, not only because he has jurisdiction over the receivership, he can also exercise bankruptcy jurisdiction if needed. And it's his settlement.[6]

36. In addition to expressing its desire for the District Court to rule on central issues of the Motion for Final Decree, the Bankruptcy Court signaled that it would prefer the District Court to withdraw the reference of the Motion for Final Decree to do so: "Wouldn't it make sense for the District Court to rule on this, whether it's in the receivership case or in a partial withdrawal of the reference to be heard together with the receivership case so that Judge Starr can decide what was settled and who owns the proceeds? Doesn't he have the ability to kind of wrap all of that up?"[7] Counsel for the Receiver and HNGH agreed with the Bankruptcy Court,[8] and even Mr. Phelan conceded that if "[Judge Starr] wants to withdraw that issue from the Bankruptcy Court, I guess he has the authority to do that."[9]

---

[5] *Id.* at 54:18–24, 57:15–58:7 (APP055, APP058–059).

[6] Ex. B, April 2025 Status Conference Tr. at 7:5–18 (APP076).

[7] Ex. A, January 2024 Status Conference Tr. at 34:13–18 (APP035).

[8] *See id.* at 51:25–52:5 (Receiver's counsel agreeing that the question of "who owns the settlement proceeds" to be "the District Court's determination," whether directly through "a motion to withdraw the reference or if it was on appeal of [the Bankruptcy Court's] determination of that issue on the motion for final decree"); *see id.* at 52:6 (HNGH's counsel stating that he "would support" the Bankruptcy Court's proposal of "requiring somebody to file a motion to withdraw the reference") (APP052 –053).

[9] *Id.* at 34:19–20 (APP035).

37. Withdrawing the reference of the Motion for Final Decree is also supported by the remaining factors, which all prioritize judicial uniformity and efficiency. Here, the Bankruptcy Court has "worried about potential for inconsistent rulings"[10] between the District Court and Bankruptcy Court on the issue of settlement proceeds ownership, saying that "given that there are competing estates, it sure seems to make a lot of sense that the District Court would rule on the issue of who owns the settlement proceeds."[11] And because the Motion for Final Decree is the final contested matter for a court to resolve in this case, there is no risk of a withdrawal of the reference delaying this case's resolution.

38. Finally, the Receiver's request is "timely." 28 U.S.C. § 157(d). As the Bankruptcy Court has noted, "[n]o standards are set forth in the statute for the definition of a 'timely' motion to withdraw. There is some indication, however, that motions to withdraw reference should be used as a vehicle to protract litigation and delay controversies." *In re Fresh Approach, Inc.*, 51 B.R. 412, 415 (Bankr. N.D. Tex. 1985). With that "standard" in mind, the Receiver—who filed the Motion for Final Decree two years ago, while Mr. Barton has delayed the Receivership Case with objections and appeals for nearly three years—has the goal of resolving this litigation expeditiously, efficiently, and economically. Parties with an interest in the Motion for Final Decree have agreed that the Motion for Final Decree should not be ruled upon while various appeals of the Receivership Order and other orders in the Receivership Case were pending.[12] The Fifth Circuit resolved those appeals only three months ago—one week after the Bankruptcy Court's most recent

[10] *Id.* at 34:9–10 (APP035).

[11] *Id.* at 51:17–21 (APP052); *see also id.* at 53:20–22 (APP054) ("But it seems like the author of the [Settlement Order] would be the most perfectly suited judge to interpret its own order.").

[12] *See* Ex. B, April 2025 Status Conference Tr. at 4:13–5:20 (showing agreement between the Receiver, Lindauer, and Phelan agreeing to waiting on the Fifth Circuit's decision on the Receivership Order before asking the Bankruptcy Court to decide the Motion for Final Decree) (APP073–074).

status conference on the Motion for Final Decree—and the Receiver is filing this Motion in advance of the Bankruptcy Court's first merits hearing on the Motion for Final Decree, which is scheduled for July 29, 2025. Accordingly, for purposes of Section 157(d), this Motion is "timely." *See In re Chateaugay Corp.*, 104 B.R. 622, 624 (S.D.N.Y. 1989) ("To be timely, a motion seeking withdrawal must be made at the 'first reasonable opportunity.'"); *In re Baldwin-United Corp.*, 57 B.R. 751, 754 (S.D. Ohio 1985) (finding a motion to withdraw reference "to be timely made if it was made as promptly as possible in light of the developments in the bankruptcy proceeding").

## VI. CONCLUSION

For these reasons, the Receiver respectfully requests that the District Court grant this Motion and withdraw the reference to the Bankruptcy Court of the Motion for Final Decree, which the District Court should grant, close this Bankruptcy Case, and grant the Receiver such other and further relief to which he is justly entitled.

DATED: July 18, 2025

Respectfully submitted,

**BROWN FOX PLLC**

By: */s/ C. Alan Carrillo*
Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
C. Alan Carrillo
State Bar No. 24109693
alan@brownfoxlaw.com

8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

***Counsel to Receiver for Reorganized Debtor 2999TC Acquisitions, LLC***

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that, on July 17, 2025, I conferred with counsel for the parties that filed objections to the Motion for Final Decree: Joyce W. Lindauer on behalf of Joyce W. Lindauer Attorney, PLLC, and Robin Phelan on behalf of PHELANLAW. On July 18, 2025, Ms. Lindauer and Mr. Phelan informed me that they reserve their position on this motion until they review the filed motion.

On July 17, 2025, I conferred with Elizabeth A. Young, Asher Bublick, and Meredyth Kippes of the U.S. Trustee's Office. On July 18, 2025, Ms. Young informed me that the U.S. Trustee's Office does not have a position on this motion.

On July 17, 2025, I conferred with Timothy Barton regarding this motion. That day, Mr. Barton informed me that he is opposed.

On July 17, 2025, I attempted to confer with John Kane, counsel to HNGH. Mr. Kane did not communicate HNGH's position, if any, on this motion.

*/s/ C. Alan Carrillo*
C. Alan Carrillo

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 18, 2025, true and correct copies of this document were served via the Court's ECF system on parties entitled to receive electronic notice in the Bankruptcy Case and by regular U.S. first class mail on the parties on the attached Service List.

*/s/ C. Alan Carrillo*
C. Alan Carrillo