**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br>2999TC ACQUISITIONS, LLC,<br>Debtor. | BANKRUPTCY CASE NO.<br><br>21-31954-SWE-11 |
| COURTNEY C. THOMAS,<br>Movant<br>vs.<br>PHELANLAW,<br>Respondent | CIVIL ACTION NO.<br>3:25-CV-1949-X |

**MOTION FOR SUMMARY JUDGMENT**

PHELANLAW, a creditor of the Debtor in the above captioned case ("JWL"), files this Motion for Summary Judgment (the "MSJ") in the above styled and numbered cause filed by Cortney C. Thomas as receiver for 2999TC Acquisitions, LLC (the "Receiver"), and represents:

1. The Receiver filed his Motion for Final Decree (the "Decree Motion") on June 14, 2023 (Dkt. No. 307). Attached to the Decree Motion is a copy of a *Verified Motion to Approve Settlement Agreement* (the "Settlement Motion") filed in the Receivership Case[1] in which the Receiver states that he has received, or will receive, $2,500,000.00 (the "Settlement Funds") from HNGH Turtle Creek, LLC ("HNGH") in a settlement of the following three disputes: (1) the ownership and rightful possession of the Property ("Dispute #1"); (2) the amount due to HNGH

[1] Case No. 3:22-CV-2118-X in the U.S. District Court for the Northern District of Texas.

under the Loan Documents ("Dispute #2"); and (3) claims and causes of action the Receiver may have possessed against HNGH on behalf of the Receivership Entities and their respective estates ("Dispute #3").[2] Tellingly, the Reply doesn't even discuss Disputes #1 and #2, although in the Settlement Motion and throughout his pleadings the Receiver said that those were the three disputes that were the subject of the Settlement Motion.

2. The Receiver cannot legally appropriate the Settlement Fund, most of which is directly attributable to the Debtor, for the benefit of the receivership Affiliates.

3. All, or, at minimum, the vast majority of the Disputes settled involved causes of action which belonged to the Debtor and resulted in the settlement (the Settlement") of $2,500,000 (the "Settlement Fund"). Consequently, all, or a large portion, of the Settlement Fund belongs to the Debtor and should be used to pay the claims of creditors of the Debtor. This proceeding is NOT about the transfers by Affiliates of the Debtor to HGNH, which the Receiver admitted in his pleadings were likely worthless, but about Disputes #1 and #2, and the portion of Dispute #3 that belonged to the Debtor and resulted in the bulk of the $2,500,000 Settlement Fund.

4. The Receiver seems to contend that the Settlement is solely attributable to alleged fraudulent transfers of Affiliates (the "Affiliates") of the Debtor. The Documents say otherwise.

5. Under 11 U.S.C. Sections 541(a)(1) and (7), the property of the Debtor's estate consists of all property the Debtor owned as of the petition date, or thereafter acquired, including the causes of action against HNGH. The Settlement Funds constitute proceeds of those causes of action which belong to the estate of the Debtor under 11 U.S.C. Section 541(a)(6). The Receiver contends that Settlement Funds obtained from Dispute #3 are solely attributable to post-petition

---

[2] See p. 8, paragraph 25 of the Motion to Approve Settlement Agreement attached as Exhibit A to the Motion for Final Decree. The Debtor is one of the "Receivership Entities".

fraudulent transfer causes of action of the Receivership estate, not the Debtor. Yet, the Receiver admits that only $3.95 million of the $4.735 million dollars (the Settlement Agreement includes $6.2 million of "Transfers" as settled) of Transfers at issue in Dispute #3 was paid by Affiliates of the Debtor. The remaining amounts were prepetition transfers by the Debtor, and the Settlement Agreement settles all contested "Transfers", including those made by the Debtor, as well as Disputes #1 and #2, which are not even claimed by the Affiliates.

6. Consequently, according to the Receiver, only 83% of the total payments came from Affiliates. He admits, however, that all those payments were pursuant to court orders, and almost certainly aren't recoverable under applicable law. He also admits in his Motion to approve the Settlement "After an extensive investigation, the Receiver has determined that there are significant, potentially impossible hurdles to unwinding the bankruptcy court's Agreed Orders".

7. Effectively, the Receiver conceded that the fraudulent transfer causes of action are probably worthless. Even if the payments by the Affiliates were recoverable, only $3.95 million of the total came from the Affiliates (83%), which leaves at least 17% ($425,000) of the total payments attributable to 2999TC and constitutes property of the Debtor. That's just for the claimed fraudulent transfers of Dispute #3.

8. The Receiver hasn't disclosed how those $3.95 million payments by the Affiliates were booked. Were they loans by the Affiliates to this Debtor? That would make the Affiliates creditors of 2999TC. Were they in payment of an obligation owed by the Affiliate to 2999TC? That would mean that those payments would not be recoverable as fraudulent transfers, and 2999TC would be entitled to the entirety of the Settlement Funds. Were the payments part of a cash management system between 2999TC and the Affiliates? At best, that would leave the Affiliates as creditors of the Debtor, entitled only to payment as an unsecured creditor in this

Chapter 11 case. Although these issues remain to be determined, for purposes of this MSJ these questions can remain unanswered since the Motion should be denied on other grounds that do not involve material contested fact issues.

9. By the Receiver's own admission in his pleadings, it's clear that the transfers by the Affiliates likely weren't recoverable as fraudulent transfers by the Receiver as receiver for the Affiliates. But what about possible preferences? HNGH wasn't a creditor of the Affiliates, so it can't be a preference for them, just a possible preference for 2999 TC, which would make any recovery the property of the Debtor. In addition, HNGH was fully secured, which would eliminate recovery as a preferential transfer. Also, transfers aren't avoidable if HNGH is in good faith and the transfer (as opposed to ownership or amount due) is for value.

10. The Receiver's Dispute #1, the ultimate ownership of the property, is property of the Debtor. It cannot be claimed by the Receiver as receiver for the Affiliates, only as the receiver for the Debtor. Those Affiliates never claimed ownership of the property. The Receiver's Dispute #2 argument, how much was owed HNGH by the Debtor is obviously property of the Debtor and cannot possibly be claimed by the Affiliates who owed nothing to HGNH. The Settlement Agreement settled **ALL** of the Disputes, not just Dispute ♯3, which the Receiver admits was "potentially impossible" and not recoverable.

11. There are inconsistencies between the reply (the "Reply") to the Motion filed by the Receiver and the actual Settlement Agreement. The Reply states that "The claims that were settled, and which gave rise to the Settlement Obligation, were post- petition, state-law fraudulent transfer claims asserted by the Receiver on behalf of non-Debtor Receivership Entities." That statement is somewhere between deceptive and an outright misrepresentation. The Receiver's own pleadings and the Settlement documents show that Disputes #1, #2 and #3 were the subject of the

Settlement, two of which, ownership and amount owed, cannot possibly be owned by anyone other than the Debtor. Dispute #3 included all of the alleged "Transfers", including those of the Debtor alleged by the Receiver. In fact, this Court denied the request of HNGH for this Court to immediately determine ownership of the Property, which is the subject of Dispute #1, and which was contested and ultimately settled by the Settlement Agreement.

12. The Receiver contends that any "post-petition" transfers by the Debtor pursuant to agreed court orders were not avoidable transfers, but the enforceability of those orders was contested by the Receiver in his own pleadings. Whatever the merits of those claims, those orders were contested and covered by the broad and inclusive language of the Settlement Agreement. And the Receiver's own pleadings state that the payments by the Affiliates were also subject to the same defense. Contrary to the position of the Receiver, the ONLY pending litigation against HNGH was brought in the Bankruptcy Court BY THE DEBTOR, not the Receiver. Indeed, The Settlement Motion states that it relates to the efforts of the Receiver to resolve stayed litigation with HNGH in the Bankruptcy Case.

13. In paragraph 4 of the Reply the Receiver states: "Indeed, none of the transfers to HNGH that the Receiver alleges were fraudulent were paid by the Debtor". This is not accurate since footnotes 11 and 12 of the Reply admit that only $3.95 million of the total of $4.735 million alleged fraudulent transfers were paid by the Affiliates. In addition, page 5 of the Settlement Agreement states:

> "**WHEREAS**, the Receiver filed his *Second Status Report* [Docket No. 139] on January 30, 2023. In that report, the Receiver reiterated his position regarding the Property and detailed his investigation into alleged fraudulent transfers. The alleged fraudulent transfers total approximately $6.2 million dollars but include transfers from the Debtor and payments made pursuant to the Forbearance Agreement and the Agreed Orders (the "**Transfers**")."

14. The actual Settlement Agreement indicates that the Receiver was asserting that the alleged fraudulent transfers asserted by the Receiver, included ALL of the Transfers, including those made by the Debtor.

15. This conclusion is confirmed by the last recital paragraph of the Settlement Agreement which states:

> "During the Mediation, the Parties, with the assistance of an experienced retired bankruptcy judge, extensively negotiated at arm's length and in good faith and now desire to enter into this Settlement Agreement to resolve and confirm, with certainty, all issues regarding the ownership of the Property, the Receiver's occupation of the Property, the validity of the Transfers, and all other claims and causes of action that could be asserted by the Receiver and the Receivership Entities against HNGH, and all claims and causes of action that could be asserted by HNGH against the Receiver and Receivership Entities;"

16. Consequently, the actual Settlement Agreement settles ALL of the "Transfers" alleged by the Receiver, including those made by the Debtor (Dispute #3) as well as Disputes #1 and #2.[3] As a result, all, or a significant portion, of the Settlement Funds are attributable to the Debtor. Since the Debtor is one of the "Receivership Entities", even the settlement of Dispute #3 included the Debtor.

17. The Settlement Agreement contains other provisions that show that all of the alleged "Transfers", including those by the Debtor, were included in the Settlement. For example, Paragraph 6 of the Settlement Agreement retains the right of the Receiver to recover the "Transfers" and preserves the defenses of HGNH. Also, the tolling provisions of Paragraph 12 apply to the "Transfers". The Settlement Agreement settled much more than the "state-law, post-petition avoidance causes of action". Contrary to the statements of the Receiver in the Reply, the Debtor doe have assets, its interest in the Settlement Fund.

---

[3] The recital paragraphs are included in the Settlement Agreement.

18. PHELANLAW was retained by the reorganized Debtor on June 7, 2022, for the limited purpose of assisting in connection with the interpretation of specific court orders. PHELANLAW had no prior contact with the Debtor or any of its principals, management, or Affiliates. The engagement ended on June 30, 2022. Robin Phelan, the sole attorney at PHELANLAW, has never met Timothy Barton (Barton"), and had limited electronic interaction with Barton during the engagement. At all times it was represented to PHELANLAW by the Debtor that the Debtor had available sufficient funds to pay HNGH in full. The engagement of PHELANLAW by the Debtor terminated prior to completion of the trial between the Debtor and HNGH. PHELANLAW is owed $60,937.50 by the Debtor.

19. This case should not be closed until creditors of the Debtor are paid from the Settlement Funds in accordance with a determination by this Court of the amounts of such claims. The Receiver wants this Court to believe that all of the Settlement Funds belong to the Receiver and should be thrown in a big pile with other collections from the Affiliates. That's not consistent with the documents, ignores the separate legal existence of the Debtor, and is not supported by the pleadings, or the law. There are no contested material facts since all of the relevant facts are contained in the documents and pleadings of the Receiver.

WHEREFORE, PREMISES CONSIDERED, PHELANLAW asks this Court to deny the Motion for Final Decree, determine the claims against this Debtor, and grant PHELANLAW such other and further relief as is just.

[*Remainder of page intentionally left blank*]

Dated: January 14, 2026

Respectfully submitted,

*/s/ Robin Phelan*
Robin Phelan
State Bar No. 15903000
**PHELANLAW**
4214 Woodfin Drive
Dallas, Texas 75220
Telephone: (214) 704-0222
robin@phelanlaw.org

[*Remainder of page intentionally left blank*]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 14, 2026, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case listed below.

Charlene C. Koonce
charlene@brownfoxlaw.com

C. Alan Carrillo
alan@brownfoxlaw.com

Katherine T. Hopkins
katherine.thomas@kellyhart.com

John J. Kane
jkane@krcl.com
ecf@krcl.com
jkane@ecf.courtdrive.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Sherrel K. Knighton
Sherrel.Knighton@lgbs.com
Dora.CasianoPerez@lgbs.com
Sean.French@lgbs.com
Dallas.Bankruptcy@lgbs.com

Steven C. Metzger
smetzger@pmklaw.com

Russell Hale Neilson
hneilson@parkinslee.com
hneilson@ecf.courtdrive.com

Kyle Woodard
kwoodard@krcl.com,
KWoodard@ecf.courtdrive.com

*/s/ Robin Phelan*
Robin Phelan