**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **Case No. 21-31954** |
| | § | |
| **Debtor.** | § | **Chapter 11** |
| | § | |
| **COURTNEY C. THOMAS** | § | |
| | § | |
| **Movant,** | § | |
| | § | |
| **vs.** | § | **Civil Action No.** |
| | § | **3:25-cv-1949-X** |
| **PHELANLAW,** | § | |
| | § | |
| **Respondent.** | § | |

**RECEIVER'S RESPONSE IN OPPOSITION**
**TO MOTION FOR SUMMARY JUDGMENT**

**BROWN FOX PLLC**

Andrew C. Debter
State Bar No. 24133954
andrew@brownfoxlaw.com
C. Alan Carrillo
State Bar No. 24109693
alan@brownfoxlaw.com

8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

***Counsel to Receiver for Reorganized Debtor 2999TC Acquisitions, LLC***

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........ 2

A. The Bankruptcy Case, the Property, and the Disputes With HNGH ........ 2

B. The SEC Receivership and the Receiver's Appointment ........ 3

C. Mediation and the Global Settlement With HNGH ........ 4

D. The Final Decree Motion and the Prior Objections ........ 5

III. LEGAL STANDARDS ........ 7

IV. ARGUMENT ........ 9

A. The Motion is Procedurally Improper and Should Be Stricken or Summarily Denied. ........ 9

B. Even if Considered, the Motion Fails on the Merits Because the Settlement Obligation is Not Property of the Bankruptcy Estate. ........ 11

C. Even if the Bankruptcy Case is Closed, Respondents' Fee Claims May Be Presented through the Receivership Claims Process. ........ 15

V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

Cases — Page(s)

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 7

*Antoine v. First Student, Inc.*,
713 F.3d 824 (5th Cir. 2013) .......... 7

*Corbello v. Sedgwick Claims Mgmt. Servs., Inc.*,
856 F. Supp. 2d 868 (N.D. Tex. 2012) .......... 10

*Gezu v. Charter Commc'ns*,
17 F.4th 547 (5th Cir. 2021) .......... 10

*In re Grotjohn*,
289 F. App'x 702 (5th Cir. 2008) .......... 14

*In re Mold Makers, Inc.*,
124 B.R. 766 (Bankr. N.D. Ill. 1990) .......... 8

*In re Stein*,
94 F. 124 (D. Ind. 1899) .......... 8

*In re Union Home & Indus., Inc.*,
375 B.R. 912 (B.A.P. 10th Cir. 2007) .......... 8

*Lacher v. West*,
147 F. Supp. 2d 538 (N.D. Tex. 2001) .......... 10

*Thomas v. Tregre*,
913 F.3d 458 (5th Cir. 2019) .......... 7

**Statutes**

11 U.S.C. § 350(a) .......... 5, 8
11 U.S.C. § 541 .......... 9, 11
11 U.S.C. § 541(a) .......... 11, 14
11 U.S.C. § 541(a)(6) .......... 12
11 U.S.C. § 549(a) .......... 14

**Rules**

Fed. R. Bankr. P. 3022 .......... 8, 9
Fed. R. Civ. P. 5(d)(1)(B) .......... 17
Fed. R. Civ. P. 56(a) .......... 7, 9

Cortney C. Thomas ("Receiver"), the court-appointed Receiver for 2999TC Acquisitions, LLC ("Reorganized Debtor" or "2999TC"), the reorganized debtor in the above-captioned bankruptcy case ("Bankruptcy Case") files this Response in Opposition to Motion for Summary Judgment ("Motion") filed by PHELANLAW.

## I. INTRODUCTION

This dispute arises from a long-running Chapter 11 bankruptcy case involving a single-purpose entity and a single asset, followed by an SEC receivership, followed by court-ordered mediation and a court-approved settlement that resolved all material disputes concerning that asset and related claims. The only remaining issue is whether the Chapter 11 case should be closed by final decree, given that there are no assets left to administer in the bankruptcy estate and all contested matters and adversary proceedings have been resolved.

Against that backdrop, Respondent now seeks so-called "summary judgment." The Motion is procedurally improper, and it does not satisfy the standards for summary judgment under Federal Rule of Civil Procedure 56. In substance, the Motion repackages objections to the Receiver's Motion for Entry of Final Decree Closing Chapter 11 Bankruptcy Case (the "Final Decree Motion") that have already been fully briefed and submitted for decision.

The Motion is not supported by a proper Rule 56 record, it does not identify a triable claim for relief that can be adjudicated through summary judgment, and it seeks to force adjudication of matters that are already presented in the Final Decree Motion and the briefing that followed. The Court should deny the Motion on procedural grounds alone. The Court should also deny it on the merits because the settlement obligation Respondent targets is not property of the bankruptcy estate, and Respondent's claims can be adjudicated in due course through the usual claim process

in the receivership. The Court should deny PHELANLAW's Motion and proceed to adjudicate the Final Decree Motion based on the extensive briefing already before the Court.[1]

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The Bankruptcy Case, the Property, and the Disputes With HNGH

2999TC filed its Chapter 11 petition on October 29, 2021.[2] The Reorganized Debtor's only tangible asset was real property located at 2999 Turtle Creek Boulevard in Dallas, Texas (the "Property").[3] The Reorganized Debtor's lender, HNGH Turtle Creek, LLC ("HNGH"), asserted that it owned the Property by virtue of a deed in lieu of foreclosure recorded in November of 2021, not long after the petition date.[4]

The bankruptcy court entered agreed orders early in the case resolving key disputes, and the Reorganized Debtor later confirmed a Third Amended Plan of Reorganization that incorporated those agreed orders.[5] Following the Debtor's default under the plan framework, HNGH sought enforcement of the agreed orders and confirmation of its ownership.[6] After extensive evidentiary proceedings and briefing, the bankruptcy court entered an order enforcing the agreed orders, concluding that the deed in lieu was valid and that HNGH rightfully owned the

[1] The Receiver respectfully submits that the existing record, including the Final Decree Motion, the objections, the Receiver's omnibus reply, and the underlying bankruptcy and receivership docket, provides a sufficient factual and legal basis for the Court to grant the Motion for Entry of Final Decree. To the extent the Court concludes that any additional factual development is necessary, the appropriate course would be to set the Final Decree Motion for an evidentiary hearing limited to any discrete factual issues the Court identifies. There is no need to entertain a procedurally improper summary judgment motion when the Court retains the ability to take further evidence directly in connection with the Final Decree Motion itself.

[2] *See In re 2999TC Acquisitions, LLC*, No. 21-31954, in the United States Bankruptcy Court for the Northern District of Texas (hereafter, the "Bankruptcy Case"), Dkt. 1.

[3] Bankruptcy Case, Dkt. 307, p. 3 ¶ 7.

[4] Bankruptcy Case, Dkt. 307, pp. 3–4 ¶¶ 8–11.

[5] Bankruptcy Case, Dkt. 307, pp. 4–5 ¶¶ 13–15.

[6] Bankruptcy Case, Dkt. 307, p. 5 ¶¶ 16–17; *see* Bankruptcy Case, Dkt. 134.

Property.[7] 2999TC appealed that ruling to the District Court, commencing Civil Case No. 3:22-cv-02186, and sought a stay pending that appeal.[8]

**B. The SEC Receivership and the Receiver's Appointment**

On September 23, 2022, the Securities and Exchange Commission (SEC) filed a federal enforcement action against Timothy Barton and numerous related entities before this Court in an action styled *Securities and Exchange Commission v. Timothy Barton, et al.*, Case No. 3:22–cv–2118–X (the "Receivership Case").[9] The district court entered an order appointing Cortney C. Thomas as receiver for those entities (the "Receivership Order").[10] The Receivership Order vested the Receiver with authority to "take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of Receivership Property" and to "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." *Id.* at ¶¶ 6(G)–(H). The Receivership Order also stayed litigation involving the Receivership Entities, including the bankruptcy-related litigation, subject to later modification by the district court.[11]

After the Receiver's appointment, HNGH intervened in the Receivership Case and sought relief related to the Property, which the Court granted.[12] The Court then directed the parties to mediation before retired Chief Bankruptcy Judge Harlin Hale.[13] The mediation was ordered against

---

[7] Bankruptcy Case, Dkt. 307, p. 5 ¶ 18; *see* Bankruptcy Case, Dkt. 283 (the "Order Enforcing Agreed Orders").

[8] Bankruptcy Case, Dkt. 307, p. 6 ¶ 19.

[9] Bankruptcy Case, Dkt. 307, p. 6 ¶ 20.

[10] Bankruptcy Case, Dkt. 307, p. 6 ¶ 21; *see* Receivership Case, Dkt. 29.

[11] Bankruptcy Case, Dkt. 307, p. 7 ¶ 22.

[12] Bankruptcy Case, Dkt. 307, p. 7 ¶¶ 23–24; *see* Order, Receivership Case, Dkt. 154 (granting permission for HNGH to intervene in the Receivership Case but denying its request to confirm ownership of the Property).

[13] Bankruptcy Case, Dkt. 307, p. 7 ¶ 24.

the backdrop of years of litigation and multiple proceedings across courts. The remaining disputes included a series of issues related to possession of the Property, enforcement of agreed orders, and the amount owed under the loan documents.[14]

### C. Mediation and the Global Settlement With HNGH

The mediation resulted in a global resolution between the Receiver and HNGH.[15] The Receiver filed a motion seeking approval of a settlement agreement in the receivership action, and this Court approved the settlement.[16] The settlement resolved, among other things, all material outstanding disputes relating to the Property and related litigation, and it required HNGH to pay a settlement obligation of $2.5 million.[17] The settlement was reached after arms-length negotiations in mediation and was approved by the court supervising the receivership.[18]

Following approval, the Settlement Order lifted the stay to allow the parties to take all steps necessary to wind down remaining litigation and to close the bankruptcy case.[19] The various remaining adversary proceedings were dismissed in accordance with the settlement framework.[20] On May 16, 2025, Barton noticed an interlocutory appeal of the Settlement Order to the United States Court of Appeals for the Fifth Circuit and sought to stay the Settlement Order pending Appeal.[21] However, the Fifth Circuit initially dismissed the appeal on July 17, 2023, later withdrew that opinion on October 12, 2023 and carried the opposed motion to dismiss with the case, and

---

[14] Bankruptcy Case, Dkt. 307, p. 8 ¶ 25.

[15] Bankruptcy Case, Dkt. 307, p. 8 ¶ 26.

[16] Bankruptcy Case, Dkt. 307, p. 8 ¶¶ 27–28; *see* Settlement Motion and Agreement, Bankruptcy Case, Dkt. 307-1; *see also* Settlement Order, Bankruptcy Case, Dkt. 307-2.

[17] Bankruptcy Case, Dkt. 307, pp. 8–9 ¶¶ 29–30; *see* Bankruptcy Case, Dkt. 307-1, pp. 14–15.

[18] *See* Bankruptcy Case, Dkt. 307, p. 8 ¶¶ 27–28.

[19] Bankruptcy Case, Dkt. 307, p. 9 ¶ 29.

[20] Bankruptcy Case, Dkt. 307, p. 10 ¶ 30.

[21] Receivership Case, Dkt. 240. *See Securities & Exchange Commission v. Barton*, No. 23-10516 (5th Cir. docketed May 18, 2023) (the "Settlement Order Appeal").

ultimately dismissed the appeal as moot on August 14, 2024 in light of the Court's ratification order.[22] Barton also filed a pro se direct appeal to the Fifth Circuit from the 2999TC Acquisitions, LLC bankruptcy case on June 21, 2023, Case No. 23-10648, and on March 26, 2024, the Fifth Circuit dismissed the appeal for lack of jurisdiction.[23] Following approval of the settlement, the bankruptcy case had no assets to administer and no live disputes requiring continued administration in a Chapter 11 forum.[24]

### D. The Final Decree Motion and the Prior Objections

On June 14, 2023, the Receiver filed the Final Decree Motion under 11 U.S.C. § 350(a) and Bankruptcy Rule 3022, seeking closure of the bankruptcy case on the ground that the estate was fully administered.[25] The Final Decree Motion explained that the bankruptcy estate had no assets remaining to administer, that the Property was owned and possessed by HNGH under the prior orders and the settlement resolution, and that the adversary proceedings and appeal were dismissed.[26]

Two professionals, Joyce W. Lindauer Attorney, PLLC and PHELANLAW, filed objections asserting that the settlement obligation should be treated as property of the estate and should be used to satisfy their professional fee claims before granting the motion for final decree.[27] The Receiver filed an omnibus reply explaining why the settlement obligation was not estate

[22] *See* Dkt. 1, Settlement Order Appeal.

[23] Bankruptcy Case, Dkt. 308; *see* Order, No. 23-10648 (5th Cir. Mar. 26, 2024).

[24] *See* Bankruptcy Case, Dkt. 307, pp. 8–9 ¶ 29–30.

[25] Bankruptcy Case, Dkt. 307.

[26] *See id.*

[27] Bankruptcy Case, Dkts. 309, 310.

property and why the asserted fee demands did not provide a basis to keep the Chapter 11 case open.[28]

The Bankruptcy Court never held a hearing on the Motion for Final Decree but did hold six status conferences, at which the Bankruptcy Court informed the parties that it believed the question of whether the settlement proceeds belong to the receivership estate or the bankruptcy estate—central to the objections to the Motion for Final Decree—to be one for the District Court, which presides over the Receivership Case.[29] On that basis, the Receiver filed a Motion to Withdraw the Reference of Motion for Entry of Final Decree (Bankruptcy Case, Dkt. 338), and the Bankruptcy Court then entered a Report and Recommendation, recommending that the District Court withdraw the reference. (Bankruptcy Case, Dkt. 348).[30] This Court then accepted and adopted the Bankruptcy Court's recommendation, granted the motion, and withdrew the reference for the motion for final decree, thereby creating this action. (Bankruptcy Case, Dkt. 351).

Subsequently, the bankruptcy clerk filed notices of transmittal (Dkts. 5, 6), attaching the pending motion for final decree, together with the two objections and omnibus reply, for the Court's convenience. PHELANLAW then filed the instant Motion for "summary judgment"

---

[28] Bankruptcy Case, Dkt. 311.

[29] *See* Bankruptcy Case, Dkt. 339, p. 56 ("The problem – the problem, Mr. Phelan, is this is not a typical narrow bankruptcy issue. This is – you're asking me to interpret Judge Starr's settlement order among other documents."), p. 57 ("I don't think I'm really the right Court to decide as between two competing estates; a receivership estate and a bankruptcy estate who owns the settlement proceeds."), p. 60 ("I'm even more convinced the District Court is the one that should decide this issue, because it's not a simple bankruptcy issue. When you have competing demands, you have the receivership estate and the bankruptcy estate. We have a district court judge who can be both of those things.").

[30] "This bankruptcy case is at an end, mercifully. The only open issue is which parties are entitled to the funds from the Receiver-HNGH settlement in the Receivership. If the Motion to Withdraw is granted, the District Court—the court with unquestionable jurisdiction over both the bankruptcy case and the Receivership—can interpret the settlement and best determine which parties are entitled to the settlement funds. The District Court can then enter an order granting the Motion for Final Decree, as there is nothing left to do in the bankruptcy case." Bankruptcy Case, Dkt. 348.

(Dkt. 7), rehashing the same issues. Joyce W. Lindauer Attorney, PLLC subsequently joined the Motion. (Dkt. 8).

The issues raised in PHELANLAW's present motion are not new. They are the same objections that were previously filed, briefed, and submitted for decision in connection with the Final Decree Motion. The bankruptcy court has previously addressed the posture of these proceedings and recommended withdrawal of the reference so that this Court may resolve the remaining questions. At this stage, the matter is ready for decision on the fully developed record that already exists.

## III. LEGAL STANDARDS

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013).

Summary judgment is unwarranted here because PHELANLAW does not identify a discrete claim or defense ripe for judgment as a matter of law, nor does it submit competent summary judgment evidence demonstrating the absence of a genuine dispute of material fact, but instead merely repackages arguments already raised in opposition to the Final Decree Motion in the form of an unauthorized supplemental brief.

Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court *shall* close the case." 11 U.S.C. § 350(a) (emphasis added); *see also In re Stein*, 94 F. 124, 125 (D. Ind. 1899) ("It is plain from these provisions of the law that it is the duty of the courts to close estates as soon as practicable."). Bankruptcy Rule 3022 implements this directive and states that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." FED. R. BANKR. P. 3022. Although the Bankruptcy Code does not define "fully administered," courts look to the Advisory Committee Note to Rule 3022 for guidance, which identifies several non-exclusive factors, including whether the confirmation order has become final, whether plan-required distributions or transfers have been completed, whether the debtor or successor has assumed management of property dealt with by the plan, whether plan payments have commenced, and whether all motions, contested matters, and adversary proceedings have been resolved. *See In re Union Home & Indus., Inc.*, 375 B.R. 912, 916–17 (B.A.P. 10th Cir. 2007). These factors are flexible guideposts rather than mandatory prerequisites, and courts retain discretion to close a case once there is no unfinished business requiring continued administration, even if certain plan payments remain ongoing. *Id.*; *see also In re Mold Makers, Inc.*, 124 B.R. 766, 768–69 (Bankr. N.D. Ill. 1990).

Here, those considerations weigh decisively in favor of entry of a final decree: the confirmed Plan has been administered pursuant to its terms and the Agreed Orders, the Property has been transferred and is owned and possessed by HNGH, all adversary proceedings and the related appeal have been dismissed, and, as explained further below, there are no remaining estate assets to administer or disputes requiring continued bankruptcy oversight. Accordingly, the estate

has been fully administered within the meaning of Section 350(a) and Rule 3022, and closure of the case is appropriate.

## IV. ARGUMENT

The Motion should be denied for three independent reasons. First, it is procedurally improper because it is not a true Rule 56 motion supported by a developed evidentiary record, but instead an unauthorized attempt to rebrief the already fully submitted Final Decree Motion under a different label. Second, even if considered on the merits, it fails because the $2.5 million settlement obligation is not property of the bankruptcy estate under 11 U.S.C. § 541, as the value of that settlement derived exclusively from state-law fraudulent transfer claims belonging to non-debtor Receivership Entities and approved in the Receivership Case, not from any estate-owned claims. Third, even if the bankruptcy case is closed, PHELANLAW's asserted fee claims are not extinguished but must be pursued through the orderly claims administration process in the Receivership, rather than through an effort to obtain priority treatment in this collateral proceeding ahead of all other Receivership creditors.

### A. The Motion is Procedurally Improper and Should Be Stricken or Summarily Denied.

PHELANLAW styles its filing as a "Motion for Summary Judgment," but it is not a proper Rule 56 motion. Summary judgment is a mechanism for adjudicating claims or defenses on a developed evidentiary record when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). PHELANLAW does not identify a cognizable claim for relief pending in this district court case that is capable of being resolved through summary judgment. The motion does

not attach competent summary judgment evidence establishing admissible facts. It does not provide the type of statement of material facts and supporting citations that Rule 56 contemplates. Instead, it reads as a supplemental merits brief on the Final Decree Motion.

"[N]either the local rules of [this district] court nor the Federal Rules of Civil Procedure allow a party to file a surreply as a matter of right." *Corbello v. Sedgwick Claims Mgmt. Servs., Inc.*, 856 F. Supp. 2d 868, 890 (N.D. Tex. 2012); *see also* N.D. TEX. LOC. CIV. R. 7.1. "Because the rules do not provide for surreplies as a matter of right, the district court only accepts such filings 'in exceptional or extraordinary circumstances.'" *Gezu v. Charter Commc'ns*, 17 F.4th 547, 555–56 (5th Cir. 2021) (quoting *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001)).

Here, the Final Decree Motion has already been presented, opposed, and replied to. The parties have already extensively briefed the sole remaining issue of whether a final decree is appropriate and whether the settlement obligation is estate property. The instant Motion therefore amounts to an unauthorized surreply. PHELANLAW's new filing attempts to obtain a second round of briefing under the label of summary judgment, without leave of court. The Court should reject that end run. If PHELANLAW wished to offer additional legal argument or additional evidence on the Final Decree Motion, the proper course would have been to seek leave to file a supplemental brief and to demonstrate good cause. PHELANLAW did not do that. It instead proceeded to take its second bite at the apple without the Court's leave.

Accordingly, the Court should strike or deny PHELANLAW's Motion as procedurally improper. *See Schroppel v. Vanderbilt Mortg. & Fin., Inc.*, No. 3:23-cv-2123-X-BN, Dkt. 37, slip op. at 1–3 (N.D. Tex. Jan. 26, 2024) (Horan, Mag. J.) (striking and unfiling unauthorized surreply). At minimum, the Court should treat it as an unauthorized supplemental brief and decline to consider it, particularly because the issues are already fully briefed and ready for decision.

**B. Even if Considered, the Motion Fails on the Merits Because the Settlement Obligation is Not Property of the Bankruptcy Estate.**

PHELANLAW's core substantive premise is that the settlement obligation must be property of the bankruptcy estate under 11 U.S.C. § 541 because the settlement purportedly resolved disputes that the Debtor litigated in the bankruptcy case. That contention is incorrect. It ignores the relative merits of the claims that gave rise to the settlement obligation. In other words, it wrongly assumes that just because the Debtor raised various claims in the bankruptcy proceeding, such as its meritless[31] claim for ownership of the Property, and those disputes were resolved by the settlement, that it must have necessarily been those claims (and not the Receiver's state law fraudulent transfer claims) that generated the "value" reflected in the $2.5 million settlement payment. It also overlooks the fact that the settlement was reached and approved in the Receivership Case based on the Receiver's authority over multiple Receivership Entities, including non-debtor entities with their own causes of action and their own property interests.

Section 541 defines property of the bankruptcy estate. 11 U.S.C. § 541(a) ("Such estate is comprised of . . . all legal or equitable interests *of the debtor* in property as of the commencement of the case." (emphasis added)). The fact that a settlement touches issues that were litigated in bankruptcy does not mean that the settlement amount automatically becomes estate property. The correct question is whether the settlement obligation constitutes "proceeds," under Section 541(a)(6), of an estate-owned asset or estate-owned cause of action, or whether it instead represents consideration paid to resolve claims belonging to **non-debtor entities** and administered in a different court-supervised estate, namely the receivership estate. *See* 11 U.S.C. § 541(a)(6)

[31] *See* Order Enforcing Agreed Orders, Bankruptcy Case, Dkt. 283, p. 48 ("The Deed in Lieu was a valid conveyance, and HNGH is now the owner of the Property pursuant to that Special Warranty Deed recorded as Instrument Number 202100327172 in the real property records of Dallas County, Texas on or about November 1, 2021. The Debtor shall have no further right, title, or interest in the Property, nor any lien, claim, encumbrance, or cloud on title against the Property.").

(bankruptcy estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate").

Here, the settlement was negotiated and approved by this Court in the Receivership Case, and it resolved a package of disputes involving the Receiver's administration of receivership property and receivership claims. It is true that that package of claims resolved disputes raised by the Debtor. But, as the Receiver has consistently explained in the Final Decree Motion and related briefing, the actual value of the $2.5 million settlement obligation stemmed **exclusively** from state law fraudulent transfer claims asserted on behalf of non-debtor Receivership Entities, and any recovery from those claims is not property of the Debtor's bankruptcy estate. Specifically, the Receiver's Verified Motion to Approve the Settlement specified that the monetary basis for the settlement amount and the entire reason that the $2.5 million settlement payment was reasonable was based on $3.95 million that were "arguably fraudulent transfers."[32] In other words, the settlement reflected the Receiver's considered view (as receiver for both the Debtor and other Receivership Entities) that, of the $6.2 million in transfers by various Receivership Entities to HNGH, only $3.95 million were potentially recoverable under state fraudulent transfer law. And that $3.95 million consisted of nine specific transfers, seven of which were post-petition, and all of which were made by non-debtor entities. Thus, the settlement funds themselves were not the proceeds of an estate-owned claim because they instead flowed from claims regarding transfers to HNGH by non-Debtor Receivership Entities.

[32] Bankruptcy Case, 307-1, p. 15 ("The Receiver contends that $3.95 million of the $4.735 million that Receivership Entities paid to HNGH under the Loan Documents are arguably fraudulent transfers, although $3.8 million of that was paid in accordance with obligations incurred by 2999TC under the Agreed Orders, which were incorporated into the confirmed and now - effective Plan, approved in the Bankruptcy Case. . . . Consequently, the Receivership Estate's receipt of $2.5 million of potentially $3.95 million in fraudulent transfer amounts is a fair and equitable result.").

PHELANLAW's motion attempts to relabel the settlement as primarily (or at least partly) compensation for Debtor claims by pointing to the fact that the settlement also resolved questions related to the Property and the loan balance. That argument confuses the scope of a settlement with the ownership of the claims that produced the settlement consideration. That is because, in the Receiver's view at the time of settlement, the Debtor's prior asserted ownership of the Property and loan balance arguments were meritless and contributed nothing in terms of settlement value. (*See* Bankruptcy Case, Dkt. 307-1, p. 15). PHELANLAW's motion also points out (correctly) that only a portion of the total transfers to HNGH were made by non-debtor affiliates, and it speculates that at least some small percentage of the settlement must be attributable to Debtor transfers or Debtor claims. Again, in the view of the parties to the settlement, including the Receiver (on behalf of the Debtor), not all of those transfers were potentially recoverable. For that reason, in negotiating the settlement at mediation and in seeking approval of the settlement before this Court, the Receiver focused exclusively on the $3.95 million in transfers that were both arguably fraudulent and potentially recoverable when evaluating and arriving at the $2.5 million settlement amount. (*See* Bankruptcy Case, Dkt. 307-1, p. 15). Accordingly, although the settlement agreement broadly "resolved" disputes relating to the full $6.2 million in transfers, that global resolution does not mean that the additional transfers beyond the $3.95 million of potentially recoverable transfers contributed *anything* to the settlement in terms of dollar amount. The settlement was a negotiated compromise approved by this Court in the Receivership Case, and it reflected litigation risks, enforcement risks, costs, and delay. PHELANLAW's crude percentage-of-payments approach is not consistent with the Receiver's Verified Motion to Approve the Settlement (or what actually took place at mediation) and is not evidence that the settlement obligation constitutes proceeds of an estate claim under Section 541(a)(6). Rather, the dispositive point is that the only fraudulent

transfer claims that the Receiver relied on in arriving at the settlement amount (i.e. state law claims based on the $3.95 million in transfers from non-debtor entities to HNGH) belonged to the Receivership estate, not to the Debtor's estate, which necessarily forecloses any argument that proceeds of the settlement of those claims constitute property of the bankruptcy estate. *See In re Grotjohn*, 289 F. App'x 702, 705 (5th Cir. 2008) ("The Transferred Money cannot qualify as 'proceeds' of estate property because *there never was a transfer of estate property*. As the transfer of an interest in those claims . . . was void *ab initio*, the Transferred Money could not and does not constitute 'proceeds ... of or from property of the estate' pursuant to § 541(a)(6)."). PHELANLAW does not meaningfully dispute that transfers from non-debtor entities to HNGH are not property of the estate. *See* 11 U.S.C. § 541(a). Nor does PHELANLAW dispute that any transfers made post-petition cannot be property of the estate. *See* 11 U.S.C. § 549(a).

Finally, PHELANLAW's approach invites this Court to re-litigate and recharacterize a settlement already approved by this Court in another federal proceeding (*i.e.*, the Receivership Case).[33] There, this Court approved the settlement as a fair compromise in the receivership context.[34] And the Fifth Circuit, over Barton's objections, dismissed his appeal of that settlement approval.[35] PHELANLAW's motion effectively asks this Court to disregard that structure and to

[33] For example, the Motion asserts that the transfers from non-debtor entities to HNGH "almost certainly aren't recoverable under applicable law" and further asserts "the Receiver conceded that the fraudulent transfer causes of action are probably worthless." (Dkt. 7 ¶¶ 6–7). The Receiver conceded no such thing. Rather the Receiver's motion to approve the settlement merely acknowledged that pursuing the $3.95 million in potentially recoverable fraudulent transfer claims would involve significant risk, effort, and expense. That is the very reason the Receiver urged this Court to approve the $2.5 million settlement obligation and, presumably, at least part of why this Court did approve it. PHELANLAW's arguments about recoverability merely project the weakness of its own position. The fraudulent transfer claims based on the Debtor's transfers to HNGH are the ones that were not recoverable, and for that reason they did not contribute to the $2.5 million settlement amount. Accordingly, because the settlement is not the proceeds of claims that were legal or equitable interests of the debtor, the settlement obligation is not property of the estate.

[34] Receivership Case, Dkt. 236, Bankruptcy Case, Dkt. 307-2 ("After carefully considered the motion, the Court GRANTS the motion and APPROVES the Settlement Agreement, finding that it is fair and equitable and in the best interests of the Receivership Estate.").

[35] *See* Docket 1, Settlement Order Appeal, No. 23-10516.

re-administer the settlement payment inside the Chapter 11 case notwithstanding the absence of estate assets and notwithstanding the completion of the bankruptcy litigation that once centered on the Property. That is not the purpose of Section 541, and it is not consistent with the final-decree framework, which is designed to close a Chapter 11 case once the estate is fully administered, not to keep it open to chase speculative alternative recoveries.

For all of these reasons, the Court should reject PHELANLAW's claim that the settlement obligation is estate property.

### C. Even if the Bankruptcy Case is Closed, Respondents' Fee Claims May Be Presented through the Receivership Claims Process.

Even if the Court enters a final decree and closes the Chapter 11 case, Respondents' asserted fee claims do not disappear. They simply must be pursued in the proper forum. That forum is the claims administration process established in the SEC Receivership, not an ad hoc determination in the context of a motion to close a fully administered bankruptcy case.

The settlement obligation that PHELANLAW seeks to capture is part of the Receivership Estate and is subject to the exclusive jurisdiction and equitable supervision of the District Court presiding over the Receivership Case.

After the resolution of Barton's pending United States Supreme Court appeal, the Receiver intends to establish, as in all receiverships, procedures for the orderly submission, evaluation, and allowance of creditor claims. Those procedures exist to ensure that similarly situated creditors are treated consistently and that distributions are made in accordance with the priorities and equitable considerations applicable in federal equity receiverships.

The present motion attempts to bypass that orderly process. Rather than submitting its claim through the Receivership claims process and standing in line with all other Receivership creditors, PHELANLAW seeks a ruling that would effectively earmark Receivership funds for its

own benefit before the broader body of creditors has even been heard. That approach would undermine the centralized and equitable claims administration framework that governs the Receivership. It would also risk preferential treatment of one asserted creditor at the expense of others whose claims have not yet been adjudicated.

Closing the bankruptcy case does not deprive Respondents of a forum. It simply requires them to pursue their alleged entitlement through the same process that governs all other creditors of the Receivership Estate. The Receivership is the proper forum to determine the validity, priority, and amount of any such claim in relation to the total pool of claims against the Receivership Estate. PHELANLAW is not entitled to a separate track or accelerated determination in this collateral proceeding.

## V. CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court deny PHELANLAW's Motion. The Receiver further requests that the Court grant the Receiver's Motion for Entry of Final Decree Closing Chapter 11 Bankruptcy Case and award the Receiver such other and further relief as the Court deems just and proper.

DATED: February 25, 2026

Respectfully submitted,

**BROWN FOX PLLC**

By: */s/ Andrew C. Debter*

Andrew C. Debter
State Bar No. 24133954
andrew@brownfoxlaw.com
C. Alan Carrillo
State Bar No. 24109693
alan@brownfoxlaw.com

8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

***Counsel to Receiver for Reorganized Debtor 2999TC Acquisitions, LLC***

## CERTIFICATE OF SERVICE

Pursuant to FED. R. CIV. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

*/s/ Andrew C. Debter*
Andrew C. Debter