FILED
MAR 05 2026
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CASE NO. 21-31954-swe11** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**OBJECTION OF TIMOTHY L. BARTON,**
**PARTY IN INTEREST, TO RECEIVER'S MOTION**
**FOR ENTRY OF FINAL DECREE CLOSING CHAPTER 11 CASE**

**COMES NOW,** Timothy L. Barton ("Barton"), in his capacity as a party in interest, former manager and equity owner of 2999TC Acquisitions, LLC (the "Debtor" or "2999TC"), and guarantor of the Debtor's secured loan, and files this Objection (the "Objection") to the Receiver's Motion for Entry of Final Decree Closing Chapter 11 Bankruptcy Case [Dkt. 307] (the "Final Decree Motion"). In support thereof, Barton respectfully states as follows:

## I. INTRODUCTION

1. The Receiver seeks to close this Chapter 11 case on the theory that the estate has been "fully administered" because (i) HNGH Turtle Creek, LLC ("HNGH") has been declared the owner of the real property at 2999 Turtle Creek Boulevard (the "Property"); (ii) the Receiver later settled with HNGH in a separate SEC receivership

for a payment stream of $2.5 million; and (iii) there are "no assets remaining" with which to satisfy claims in this case[1].

2. That framing is incomplete and legally insufficient. The record reflects that: (a) 2999TC acquired the Property in September 2019 for approximately $43 million, financed by a $32.5 million secured note; (b) subsequent development equity and payments produced a substantial equity cushion; (c) the Property was later appraised at approximately $72.5 million; and (d) the Receiver agreed to a settlement under which HNGH keeps the entire Property and the only cash consideration flowing out of the transaction — $2.5 million — is diverted solely to the SEC receivership, not to this Chapter 11 estate[2].

3. Under those circumstances, the estate cannot be deemed "fully administered" within the meaning of 11 U.S.C. § 350(a) and Fed. R. Bankr. P. 3022. The HNGH settlement monetizes estate property and estate causes of action, yet there has been no Rule 9019 motion in this Court, no notice to 2999TC creditors, and no finding that the compromise is fair and equitable to this bankruptcy estate. The Final Decree Motion attempts to convert a value-destructive, receivership-driven deal into a fait accompli for bankruptcy purposes and to use a "final decree" as a back-door approval of that settlement. The Court should decline to do so. Barton does not ask this Court, in this Objection, to re-litigate the enforcement proceedings or the Agreed Orders previously entered, which are the subject of related appellate proceedings.[3] Rather, Barton objects to any finding or decree that (a) deems this Chapter 11 estate "fully

---

[1] Motion for Entry of Final Decree Closing Chapter 11 Bankruptcy Case ("Final Decree Motion"), In re 2999TC Acquisitions, LLC, No. 21-31954-swe11 (Bankr. N.D. Tex.), Dkt. 307, at 2–4.

[2] See Receiver's Verified Motion to Approve Settlement Agreement with HNGH Turtle Creek, LLC ("Settlement Mot."), SEC v. Barton, No. 3:22-cv-2118-X (N.D. Tex.), Dkt. 210; Appraisal of 2999 Turtle Creek Boulevard, Ex. __ (valuing the Property at approximately $72.5 million).

[3] See Fifth Circuit 25-10871; See also Supreme Court – current cert petition 25-465.

administered" notwithstanding the surrender of a substantial asset and the diversion of settlement consideration away from this estate, and (b) tacitly or expressly blesses the HNGH settlement as if it had been vetted under Fed. R. Bankr. P. 9019 in this Court.

4. For the reasons set forth below, the Final Decree Motion should be denied, or at minimum deferred, unless and until the HNGH settlement and the disposition of all proceeds and causes of action associated with the Property are properly presented to this Court under Bankruptcy Rule 9019 on notice to creditors and parties in interest.

## II. JURISDICTION, VENUE, AND PARTY-IN-INTEREST STATUS

5. This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2), including matters relating to administration of the estate and closing or reopening of cases.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

7. Barton is a "party in interest" under 11 U.S.C. § 1109(b) because he is: (a) the Debtor's former manager and equity owner; (b) the guarantor of the HNGH debt; and (c) directly affected by the disposition of estate property and estate causes of action involving the Property and the HNGH loan. The relief requested in the Final Decree Motion, and the treatment of the HNGH settlement within this case, materially impact Barton's economic and legal interests, including because HNGH has asserted (and/or is pursuing) a guaranty claim against Barton alleged to exceed $62.5 million in related litigation (the "Guaranty Action"). He therefore has standing to object to the Motion and to request appropriate relief from this Court.

## III. FACTUAL BACKGROUND

8. On October 29, 2021, 2999TC filed a voluntary petition under Chapter 11 in this Court. At filing, 2999TC was a single-purpose entity whose primary asset was the Property at 2999 Turtle Creek Boulevard in Dallas, Texas. According to the Final Decree Motion, 2999TC purchased the Property in September 2019 for approximately $43,049,929, funded in part by a $32,500,000 secured note and additional equity investment[4].

9. The Debtor's plan, as confirmed by this Court, incorporated the December 2021 and March 2022 Agreed Orders between 2999TC and HNGH. Those orders set payoff deadlines under which 2999TC could retain the Property if it paid HNGH an agreed payoff. HNGH moved to enforce the Agreed Orders prior to the termination time and date of the agreed deed, and after extensive hearings this Court entered its Order Enforcing Agreed Orders [Dkt. 283], concluding, among other things, that the Deed in Lieu was a valid conveyance and that HNGH held title to the Property[5].

10. The Debtor appealed that enforcement order to the District Court and sought a stay pending appeal. While on appeal and before it could be heard, the SEC enforcement action in the Northern District of Texas resulted in appointment of a federal equity receiver over Barton and numerous related entities, including 2999TC. The receivership stay halted the appeal and other proceedings in this case, and the Receiver assumed control of 2999TC.

---

[4] See Final Decree Mot., Dkt. 307, at 1–3; Settlement Mot., Dkt. 210.

[5] See Order Enforcing Agreed Orders ("Enforcement Order"), In re 2999TC Acquisitions, LLC, No. 21-31954-swe11 (Bankr. N.D. Tex.), Dkt. 283.

11. In the related SEC enforcement action in the Northern District of Texas, the district court appointed a federal equity receiver over Barton and numerous affiliated entities, including 2999TC. HNGH sought to participate in that action, and following further proceedings it was permitted to intervene. The Receiver and HNGH then participated in court-ordered mediation. Barton contends he was excluded from that mediation. The mediation resulted in a Settlement Agreement under which: (a) HNGH retained ownership of the Property; (b) the Receiver granted releases to HNGH, including releases of potential avoidance and fraudulent-transfer claims arising from payments made under the loan documents and the Agreed Orders; (c) the Receiver caused dismissal of the 2999TC appeal and related adversary proceedings; and (d) HNGH agreed to pay $2.5 million to the SEC Receivership Estate over time. The district court approved that settlement as "fair and equitable and in the best interests of the Receivership Estate" and lifted the receivership stay to permit the procedural steps necessary to dismiss the appeal/adversary and pursue closure of this bankruptcy case[6].

12. The Final Decree Motion now asks this Court to: (a) enter a final decree closing this Chapter 11 case under § 350(a); and (b) "to the extent the Court deems necessary or appropriate," treat the final decree itself as an order approving the HNGH settlement under Bankruptcy Rule 9019[7].

13. The Motion further asserts that: (a) the Debtor's only assets were the Property, certain development documents, and alleged claims related to the Property; (b) as a result of the Agreed Orders, the Plan, Order Enforcing Agreed Orders, and the HNGH

---

[6] See Settlement Mot., Dkt. 210; Order Granting Approval to Receiver's Motion to Approve Settlement Agreement with HNGH Turtle Creek, LLC ("Settlement Order"), SEC v. Barton, No. 3:22-cv-2118-X (N.D. Tex.), Dkt. 236.

[7] Final Decree Mot., Dkt. 307, at 7–8 ¶ 32.

settlement, HNGH now owns the Property and "all of the Reorganized Debtor's alleged claims related to the Property are resolved," so there are "no assets left to administer"; and (c) therefore "there are no assets remaining" from which to satisfy any unpaid claims[8].

14. Barton disputes those legal conclusions and the use of this Final Decree Motion as an attempted back-door Rule 9019 approval for a settlement that extracted all remaining equity value in the Property and associated claims, diverted the only cash consideration to a different estate, and left this Chapter 11 estate with nothing.

## IV. LEGAL STANDARD – § 350(a) AND BANKRUPTCY RULE 3022

15. Section 350(a) provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." Fed. R. Bankr. P. 3022 implements § 350(a) in Chapter 11 and directs that "after an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

16. The Bankruptcy Code does not define "fully administered." Courts therefore look to the Advisory Committee Note to Rule 3022, which lists non-exclusive factors such as: the finality of the confirmation order; whether property to be transferred has been transferred; whether payments under the plan have commenced; and whether motions and adversary proceedings have been resolved. Those factors are guides, not rigid prerequisites, and the touchstone is whether there is "unfinished business" before the Court or in the case.[9]

---

[8] Final Decree Mot., Dkt. 307, at 4–5.
[9] See Fed. R. Bankr. P. 3022 advisory committee's note (1991).

17. Critically, Rule 3022 is not a vehicle for retroactively approving compromises or reallocating estate value outside the framework of the Bankruptcy Code. Where significant estate assets, claims, or proceeds remain unaccounted for or where compromises affecting estate property have not been subjected to the notice and fairness review required by Rule 9019, a court should not declare the estate "fully administered."

## V. ARGUMENT

### A. The Estate's Economic Stake in the HNGH Settlement and Lost Equity Has Not Been Fully Administered.

18. The Final Decree Motion acknowledges that 2999TC's sole tangible asset was the Property. The record further reflects that the Property was purchased for approximately $43 million, was subject to a $32.5 million secured loan, and later appraised at approximately $72.5 million. Even allowing for dispute over exact numbers, those figures show a substantial equity cushion and meaningful upside value for the bankruptcy estate and its creditors if the disputes with HNGH had been resolved through a value-maximizing sale or refinance rather than unilateral surrender.

19. The Receiver's settlement with HNGH resolved disputes over: (i) ownership of the Property; (ii) the amount allegedly owed under the loan documents; and (iii) potential fraudulent-transfer and related claims tied to payments made by 2999TC and affiliated entities. In exchange, HNGH kept the Property, and the Receiver obtained a

$2.5 million payment stream payable not to this bankruptcy estate but into the SEC Receivership Estate.[10]

20. From the perspective of this Chapter 11 estate, the settlement is nothing less than a conversion of the Debtor's remaining economic stake in the Property and associated claims into a $2.5 million cash asset held in another proceeding. Declaring the estate "fully administered" without any accounting or distribution of that consideration to 2999TC's creditors is inconsistent with 11 U.S.C. § 350(a and Fed. R. Bankr. P. 3022, which contemplate closing a case only after the estate has in fact been fully administered.

**B. Bankruptcy Creditors Have Not Been Paid; This Is a Collapsed Plan, Not a Consummated One.**

21. The Post-Confirmation Report embedded in the Final Decree Motion concedes that only three proofs of claim were filed: (i) a tax claim later withdrawn; (ii) an approximately $18,092 general unsecured claim held by Jackson Walker LLP; and (iii) an asserted secured claim of approximately $45.9 million held by HNGH. The Report further concedes that there are "no assets remaining" to pay any unpaid claims[11].

22. In other words, this is not a case where a Chapter 11 plan has been successfully consummated and distributions made. It is a case in which the plan "has been administered by its terms" only in the narrow sense that the Debtor defaulted, the Agreed Orders allowed HNGH to enforce its remedies, and the Receiver then settled

[10] Settlement Mot., Dkt. 210; Settlement Order, Dkt. 236.
[11] See Final Decree Mot., Dkt. 307, at 9–10 (Post-Confirmation Report).

with HNGH in a different proceeding in a manner that leaves this estate with no distributable assets at all.

23. The fact that the plan documents contemplated a default path that effectively hands the Property to HNGH does not, by itself, require this Court to bless that outcome as a "fully administered" estate warranting closure, particularly when a receivership-driven settlement has redirected the only cash consideration away from this estate.

**C. Contested Matters and Estate Claims Remain Concerning the HNGH Settlement.**

24. The Final Decree Motion asserts that all adversary proceedings have been dismissed and that all "known claims and causes of action that might have been brought on behalf of the Reorganized Debtor and/or its bankruptcy estate, including actions under Chapter 5," are now "resolved" by the HNGH settlement. That statement is, at best, incomplete.

25. As to formal proceedings, it is true that: (a) the First Adversary Proceeding was dismissed pursuant to the December 2021 Agreed Order; (b) the Second Adversary Proceeding was dismissed by joint stipulation after approval of the HNGH settlement; and (c) the appeal of the Order Enforcing Agreed Orders has been dismissed as part of the same settlement.

26. But the impact of the HNGH settlement on this estate — including whether the $2.5 million payment stream and any related rights are property of this estate or proceeds of estate property, and whether the settlement is fair and equitable to 2999TC's creditors — has never been presented to, or adjudicated by, this Court under Rule 9019. That unresolved issue, standing alone, means the estate has not been fully administered.

**D. The Court Should Not Use a Final Decree as a Back-Door Rule 9019 Approval of the HNGH Settlement.**

27. In paragraph 32 of the Final Decree Motion, the Receiver asks that "to the extent the Court deems necessary or appropriate, the Final Decree constitute an order approving the Settlement Agreement under Bankruptcy Rule 9019."

28. That request is improper. The HNGH Settlement was presented and approved in the SEC receivership as being in the best interests of the Receivership Estate, not this Chapter 11 estate. No Rule 9019 motion has been filed in this case. No notice of any proposed compromise of 2999TC's property or causes of action has gone to 2999TC's creditors. No creditor has been afforded the opportunity to evaluate whether surrendering a $72.5 million development asset and related claims in exchange for a $2.5 million payment stream to another estate is "fair and equitable" to them.

29. Rule 9019 exists precisely so that compromises affecting estate property are vetted by the bankruptcy court on adequate notice to parties in interest and evaluated under standards that focus on the best interests of the estate. The Final Decree Motion attempts to short-circuit that process by importing a receivership-only fairness finding and asking this Court to "bless" the settlement indirectly via entry of a final decree. The Court should not allow its ministerial authority to close a case under Rule 3022 to be used as a surrogate for substantive Rule 9019 review.

30. At a minimum, the Court should decline to treat any final decree as an approval of the HNGH settlement. If the Receiver believes Rule 9019 approval is required, the Receiver should be required to file an explicit motion under Rule 9019, provide

notice to 2999TC creditors and parties in interest, and satisfy the applicable Fifth Circuit standards.

**E. The Receiver's "No Assets Remain" Theory Ignores the $2.5 Million Settlement Payments and Other Estate Property.**

31. The Post-Confirmation Report asserts that 2999TC's assets consisted of the Property, development documents, and alleged claims against third parties; and that pursuant to the Agreed Orders, Plan, Order Enforcing Agreed Orders, and HNGH settlement, HNGH now owns the Property and "all of the Reorganized Debtor's alleged claims related to the Property are resolved," so there are "no assets left to administer."

32. That description omits the most significant asset of all: the $2.5 million settlement payments that HNGH agreed to make to the Receiver in exchange for keeping the Property, obtaining releases, resolving potential fraudulent-transfer and related claims, and securing dismissal of the 2999TC appeal and adversary.

33. Economically, those settlement payments are proceeds of estate property and estate causes of action. The fact that they are currently held or administered in a different proceeding does not erase their origin or change their character for purposes of determining whether the 2999TC estate has been "fully administered." To the contrary, the existence of that payment stream confirms that there remains unadministered value traceable to the Property and to causes of action that 2999TC and its estate could assert.

34. Proceeds of estate property and estate claims do not cease to be assets of the Debtor's estate merely because a receiver, acting under a separate order, elected to route them into a different estate. Before this case can be closed, there must be clarity about whether and to what extent those settlement payments, and any associated rights,

belong to the 2999TC estate and how they will be treated vis-à-vis 2999TC's creditors.

**F. Predatory Economics and Double Recovery by HNGH Warrant Heightened Scrutiny, Not Closure.**

35. The Receiver's own filings describe a financing structure in which: (a) 2999TC acquired the Property for approximately $43 million with a $32.5 million secured note; (b) Receivership Entities invested additional cash and development expenditures into the project; (c) 2999TC and related entities later paid millions of dollars to HNGH under the loan documents and Agreed Orders; and (d) despite those payments, HNGH still asserts a claim in the range of roughly $40–57 million based on stacked interest rates and default interest.[12]

36. The HNGH settlement then allows HNGH to keep a Property appraised at approximately $72.5 million, while the only cash consideration — $2.5 million — is diverted to the Receivership Estate, leaving 2999TC's bankruptcy creditors with no recovery and the estate with no remaining assets. From the bankruptcy perspective, that economics reflects a predatory outcome and a double recovery at the expense of equity and general unsecured creditors. Barton further contends that HNGH was not the originating lender on the Property and that HNGH acquired its position through a secondary-market purchase of the loan (or a participation interest) and then invoked a technical default and leveraged springing-control, default-interest, and enforcement provisions to accelerate and maximize recovery. Barton alleges that this strategy enabled HNGH to obtain the Property at a steep discount while continuing to assert a

[12] See Settlement Mot., Dkt. 210 (describing the loan terms, payments, and HNGH's asserted payoff amounts); Enforcement Order, Dkt. 283.

substantial deficiency, producing a de facto double recovery at the expense of equity and unsecured creditors. These circumstances underscore why any compromise affecting the Property, related claims, and resulting consideration must be subjected to bankruptcy-court scrutiny under Rule 9019 before the estate can be declared fully administered.

37. That is precisely the kind of result that warrants careful bankruptcy-court scrutiny of any compromise affecting estate property and estate claims, not summary closure of the case and implied ratification of the settlement through a final decree.

**G. The SEC Receivership Creates Conflicts and Cannot Override the Bankruptcy Court's Duties Under the Code.**

38. The Final Decree Motion relies heavily on the SEC Receivership Order, which empowers the Receiver to "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands" of the Receivership Entities, including 2999TC. On that basis, the Motion contends that "all known claims and causes of action" that might be brought on behalf of 2999TC's bankruptcy estate — including Chapter 5 claims — have been resolved by the HNGH settlement.

39. But a receivership order cannot amend the Bankruptcy Code or divest this Court of its independent responsibility to determine what is or is not property of the estate, how compromises of estate property are to be administered, and whether an estate has been fully administered under § 350(a) and Rule 3022. The Receiver's fiduciary duty to maximize value for the Receivership Estate as defined in the SEC case creates an inherent conflict where value can be shifted away from this Chapter 11 estate and its creditors.

40. The HNGH settlement embodies that conflict: it channels the only cash proceeds arising from the Property and related claims into the Receivership Estate and leaves the 2999TC estate empty. That is a further reason this Court should be hesitant to conclude that the estate has been fully administered or that all potentially valuable causes of action have been exploited for the benefit of 2999TC's creditors.

## H. Equity and Public-Interest Considerations Weigh Against Entering a Final Decree.

41. The Receiver notes that Barton's emergency motion to stay the HNGH settlement order in the Fifth Circuit was denied as "moot" after the Property had been transferred. That procedural ruling does not, however, represent an appellate endorsement of the merits or fairness of the settlement as it affects this bankruptcy estate. There has never been appellate review of whether the trade of a $72.5 million asset and associated claims for a $2.5 million payment stream to another estate is fair to 2999TC's creditors[13].

42. In deciding whether to enter a final decree, the Court is not required to — and should not — ignore the practical consequences of closure, including the effect on creditors and parties in interest. Here, entry of a final decree would effectively bless a settlement that diverts the only residual value tied to estate assets away from this Chapter 11 case, without ever having applied the Rule 9019 standards focused on the best interests of this estate.

[13] See Final Decree Mot., Dkt. 307, at 3 n.1; Notice of Appeal, SEC v. Barton, No. 3:22-cv-2118-X (N.D. Tex.), Dkt. 240.

43. Equity and the public interest favor transparency and proper application of the Bankruptcy Code's safeguards before this estate is declared fully administered. At minimum, Barton respectfully submits that the estate should not be closed until the Receiver has accounted for the $2.5 million settlement payments and any other proceeds traceable to the Property and related claims, and until this Court has had the opportunity, on proper notice, to consider whether any compromise affecting those rights is fair and equitable to this estate.

44. There is no practical benefit to immediate closure while related appellate proceedings remain pending. Barton has sought review of the receivership-driven disposition of 2999TC and related dismissals in the Fifth Circuit and in a pending petition for certiorari. Entry of a final decree could be cited to argue waiver, mootness, or administrative finality, and could complicate restoration of the status quo should appellate relief be granted. The Court should therefore defer closing the case until those proceedings are resolved or until the Court has conducted the required bankruptcy-court review on proper notice.

45. The no-harm default is to preserve the status quo. Maintaining the status quo by leaving this case open imposes minimal burden and avoids incremental administrative costs. By contrast, closing the case now—particularly where the Receiver asks the Court to treat a final decree as a surrogate for Rule 9019 approval—creates needless expense and procedural risk. If closure is later undone, any resulting administrative dislocation and expense would fall on the receivership estate and parties in interest, with no corresponding benefit from closing today.

46. The HNGH settlement's disposition of the Property and scope of releases also bears directly on pending guaranty litigation concerning the HNGH debt. Barton contends the settlement and releases are inconsistent with, and violate or circumvent, rights and defenses being litigated in that Guaranty Action—including by reallocating value and releasing claims without bankruptcy-court review and without preserving defenses, offsets, and estate-derived claims. Barton further contends that the settlement order and releases conflict with issues being litigated in the Guaranty Action and related litigation challenging the settlement, and that a final decree should not enter while those disputes remain pending. Until the settlement is presented to this Court under Fed. R. Bankr. P. 9019 with full disclosure of its implications for this estate and any related guaranty claims, and until the Court can determine that closure will not prejudice those related disputes, the estate cannot be deemed "fully administered."

## VI. CONCLUSION AND REQUESTED RELIEF

WHEREFORE, for the foregoing reasons, Timothy L. Barton respectfully requests that the Court:

(a) DENY the Receiver's Motion for Entry of Final Decree Closing Chapter 11 Bankruptcy Case [Dkt. 307], and maintain the status quo, because leaving this case open imposes minimal burden while closure would create unnecessary cost, risk, and prejudice (including if reopening later becomes necessary);

(b) in the alternative, DEFER ruling on the Final Decree Motion unless and until: (i) the Receiver files and prosecutes a motion under Fed. R. Bankr. P. 9019 seeking approval of

the HNGH settlement to the extent it affects property of this estate or proceeds thereof; (ii) creditors and parties in interest receive proper notice and an opportunity to be heard; (iii) the Court is satisfied that all proceeds, rights, and causes of action traceable to the Property and to claims against HNGH have been fully disclosed and appropriately administered for the benefit of 2999TC's creditors; (iv) the Receiver demonstrates, with full disclosure, that the HNGH settlement and any related releases do not impair, waive, or prejudice—and are not inconsistent with, do not violate, and cannot be used to prejudice—estate rights or Barton's defenses, offsets, or claims being litigated in the pending Guaranty Action or any related litigation challenging the settlement; and (v) the Receiver demonstrates that entry of a final decree will not prejudice related pending appellate proceedings or the pending guaranty litigation concerning the HNGH debt (including any asserted guaranty claim alleged to exceed $62.5 million); and

(c) grant Barton such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: March 4, 2026

*/s/ Timothy L. Barton*
Timothy L. Barton, Pro Se
3926 Vista Woods Drive
Carrollton, TX 75007
Phone: 214-673-8714
Email: Timothy.Barton@proton.me

**CERTIFICATE OF SERVICE**

I hereby certify that on the day of filing, a true and correct copy of the foregoing Objection of Timothy L. Barton, Party in Interest, to Receiver's Motion for Entry of Final Decree Closing Chapter 11 Case was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered to receive electronic notice in this case, including counsel for the Receiver and counsel for HNGH Turtle Creek, LLC.

*/s/ Timothy L. Barton*
Timothy L. Barton, Pro Se

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| | § | **CASE NO. 21-31954-swe11** |
| **2999TC ACQUISITIONS, LLC,** | § | |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**ORDER ON RECEIVER'S MOTION FOR ENTRY OF**
**FINAL DECREE CLOSING CHAPTER 11 BANKRUPTCY CASE**

**CAME ON** for consideration the Receiver's Motion for Entry of Final Decree Closing Chapter 11 Bankruptcy Case [Dkt. 307] (the "Final Decree Motion") and the Objection of Timothy L. Barton, Party in Interest, to Receiver's Motion for Entry of Final Decree Closing Chapter 11 Case (the "Objection"). The Court, having considered the Motion, the Objection, the arguments of parties in interest, and the record in this case, finds that the Motion should be DENIED for the reasons stated on the record.

IT IS THEREFORE ORDERED that the Receiver's Motion for Entry of Final Decree Closing Chapter 11 Bankruptcy Case [Dkt. 307] is hereby DENIED without prejudice.

IT IS FURTHER ORDERED that this Order maintains the status quo and does not adjudicate, approve, or disapprove any settlement. Any request for approval of the settlement between the Receiver and HNGH Turtle Creek, LLC, to the extent such settlement affects property of the Debtor's estate or proceeds thereof, shall be brought, if

at all, by separate motion under Fed. R. Bankr. P. 9019 on notice to creditors and parties in interest.

IT IS FURTHER ORDERED that the Court retains jurisdiction to consider any such Rule 9019 motion and any further relief necessary to ensure the proper administration of this Chapter 11 estate.

SO ORDERED.

Dated: ____________________, 2026

_______________________________________

UNITED STATES BANKRUPTCY JUDGE